IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

FB ACQUISITION, LLC,

    Plaintiff,

v.

TENNESSEE BUSINESS AND INDUSTRIAL       No. 1:17-cv-01076-JDB-jay
DEVELOPMENT CORPORATION,

    Defendant/Third-Party Plaintiff,

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION,

    Third-Party Defendant.

___

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
___

*INTRODUCTION AND BACKGROUND*

This action was brought on April 20, 2017, by the Plaintiff, FB Acquisition, LLC ("FB Acquisition"), against the Defendant, Tennessee Business and Industrial Development Corporation ("TN BIDCO") alleging breach of contract in violation of Tennessee law. (Docket Entry ("D.E.") 1.) On November 30, 2017, TN BIDCO filed a third-party complaint against the United States Small Business Administration ("SBA") for breach of contract, indemnification, and an accounting. (D.E. 34.) Before the Court is the Plaintiff's motion for summary judgment on its claim against TN BIDCO pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 66.) As the briefing has closed, the motion is ripe for disposition.

*STANDARD OF REVIEW*

Rule 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must demonstrate the basis for its motion and identify those portions of the record which it believes demonstrate that no genuine issue of material fact exists and that it is entitled to judgment in its favor.  *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party must then come forth with specific facts showing a genuine issue for trial. *Id.* at 628 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  At that point, the court is to "determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson*, 477 U.S. at 251-52) (internal quotation marks omitted).  In doing so, the court must "view the facts and draw all reasonable inferences in favor of the non-moving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

*UNDISPUTED FACTS*

The following facts are undisputed.  In July 1999, the Defendant made a loan in the amount of $1 million (the "Loan") to Greystone Woods, LLC (the "Borrower").  The SBA guaranteed seventy-five percent of the Loan, leaving twenty-five percent unguaranteed.  On July 30, 1999, TN BIDCO and The Bank of Adamsville (the "Bank") entered into a Master Participation Agreement (the "Participation Agreement") relating to the Loan.  Under the terms of the Participation Agreement, Defendant conveyed to the Bank a twenty-five percent participation interest in the Loan.

Subsequently, the Bank merged with Community South Bank, which later became the subject of a federal receivership under which the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver. In an agreement dated April 10, 2014, the FDIC sold and assigned its interest in the participation to the Plaintiff. Thereafter, FB Acquisition became the owner and beneficiary of the Participation Agreement.

On November 20, 2015, the SBA sent a letter to TN BIDCO advising that, pursuant to 13 C.F.R. § 120.535(d), it had elected to take over servicing of the Loan. In accordance with the regulation, Defendant was required to assign the Loan documentation to the SBA.

In a July 7, 2016, letter, the SBA informed Defendant that it had learned that, prior to its election to service the Loan, TN BIDCO had failed to comply with SBA loan program requirements regarding remittance of the guaranteed shares of payments made by Borrower. Under SBA rules, Defendant was required to remit the guaranteed share of all post-guaranty purchase borrower payments to the agency within fifteen days of receipt. SBA had received and reviewed cancelled checks from the Borrower indicating that Defendant received loan payments from the Borrower but failed to remit the guaranteed share thereof to the SBA. The unremitted payments, each in the amount of $7,300, were dated March 9, April 13, May 11, June 9, July 3, August 28, September 25, October 30, November 30, and December 21 of 2015. Because the retention of these guaranteed share payments by Defendant constituted a violation of SBA loan program requirements, the agency notified TN BIDCO in the July 7, 2016, communication that it would set off the unguaranteed shares and apply those funds to the unremitted guaranteed share payments.

In a written response to the SBA's notification, dated August 5, 2016, counsel for TN BIDCO advised with respect to the Loan:

3

> The BIDCO investigated the payments made by Greystone Woods, LLC . . . and has determined that the BIDCO's Chief Financial Officer at the time, Lyle Holden, did not properly forward the payments from this borrower to the SBA. Accordingly, the BIDCO does not contest the setoff with respect to these payments.

(D.E. 69-3 at PageID 358.)

It is undisputed for purposes of the instant motion that FB Acquisition did not receive any payments under the Participation Agreement after January 2016. In a letter dated December 7, 2016, Plaintiff made demand upon TN BIDCO for repurchase of the participation interest conveyed under the Participation Agreement via an immediate payment of $163,366.50, consisting of the then outstanding principal balance of Plaintiff's participation interest of $155,783.27, plus accrued interest of $7,583.23, which continued to accrue daily at the per diem rate of $24.54120. Defendant refused to do so. This lawsuit ensued.

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

The Court has subject-matter jurisdiction over this action by virtue of the parties' diversity of citizenship and the amount in controversy, which exceeds $75,000. *See* 28 U.S.C. § 1332(a). In actions arising from diversity jurisdiction, courts are to apply the substantive law of the forum state. *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015). To establish a breach of contract in Tennessee, a plaintiff must show "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Franklin Am. Mort. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 281 (6th Cir. 2018) (citing *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816-17 (Tenn. Ct. App. 2011)).

The sole contract upon which FB Acquisition relies in bringing this action is the Participation Agreement. There does not appear to be any dispute regarding the existence of the contract. Rather, the parties' arguments focus on the second element of a breach of contract claim

4

-- the breach itself. Specifically, Plaintiff points to Paragraph 6 of the Participation Agreement, which reads as follows:

> 6.   TN BIDCO shall be responsible for the collection of all payments due on the loan, together with monthly report of funds received and funds disbursed, including monthly disbursements to Bank for its interests in the loan. Copies of the monthly reports shall be transmitted to Bank at the time disbursements are made to Bank.

(D.E. 1-3 at PageID 13.) It is the position of the movant that TN BIDCO breached this provision by failing to properly remit to the SBA, from March 9 to December 21, 2015, the guaranteed share of each $7,300 monthly payment it received from the Borrower, which ultimately led to the setoff of the unguaranteed portion of the Loan.

In resolving questions of contract interpretation under Tennessee law, the court "is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *101 Constr. Co. v. Hammet*, 603 S.W.3d 786, 794 (Tenn. Ct. App. 2019) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)), *appeal denied* (Mar. 26, 2020). This determination "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). Contract interpretation is based upon "the entire body of the contract and the legal effect of it as a whole." *Adkins v. Bluegrass Estates, Inc.*, 360 S.W.3d 404, 411 (Tenn. Ct. App. 2011) (citing *Aetna Cas. & Surety Co. v. Woods*, 565 S.W.2d 861, 864 (Tenn. 1978)).

The court's "initial task is to determine whether the language in the contract is ambiguous." *Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386-87 (Tenn. 2011). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in

more ways than one." *101 Constr. Co.*, 603 S.W.3d at 795 (quoting *Planters Gin*, 78 S.W.3d at 890) (internal quotation marks omitted). "If the language in the contract is clear and unambiguous, then the literal meaning controls the outcome of the dispute" and "the court should not go beyond its four corners[.]" *Adkins*, 360 S.W.3d at 412 (internal quotation marks omitted). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 191 (Tenn. 1973).

The Plaintiff insists that the language of Paragraph 6 is clear and unambiguous. Neither the Court nor the Defendant disagree with that assessment. The problem for FB Acquisition is that it in no way clearly and unambiguously requires TN BIDCO to remit funds to the SBA. The movant also submits that TN BIDCO admitted in its August 5, 2016, response to the SBA's July 7, 2016, notice that it had "breach[ed] [] the Participation Agreement" in failing to forward the May through December 2015 payments to the SBA. (D.E. 66-1 at PageID 307.) This is an inaccurate characterization of the record. TN BIDCO admitted to failing to forward payments to the SBA, but the August 5 missive made no mention, much less admitted to a breach, of the Participation Agreement.

Essentially, it appears to the Court that Plaintiff is attempting to step into the shoes of the SBA, turning Defendant's undisputed violation of SBA loan program rules into a breach of its (FB Acquisition's) Participation Agreement with TN BIDCO. Interpreting the four corners of the contract at issue in light of its plain meaning, however, it is the Court's finding that Plaintiff cannot establish that TN BIDCO's failure to remit payments to the SBA constituted a breach of its Participation Agreement with FB Acquisition. Thus, Plaintiff has failed to show that it is entitled to judgment as a matter of law. The motion for summary judgment is DENIED.

IT IS SO ORDERED this 7th day of October 2020.

                                                      s/ J. DANIEL BREEN
                                                     UNITED STATES DISTRICT JUDGE